IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION

| | | |
|---|---|---|
| COURTNEY JACKSON, | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| GALMAN GROUP, LTD. d/b/a THE GALMAN GROUP | : | |
| | : | |
| Defendants | : | **COMPLAINT** |
| | : | |

## COMPLAINT

### INTRODUCTION

Plaintiff, Courtney Jackson ("Plaintiff"), by and through her attorney, Gerald B. Baldino, III, Esq., brings this action against the herein named Defendant, Galman Group, Ltd. d/b/a The Galman Group (hereinafter "Galman"), for unlawful discrimination in violation of 42 U.S.C. Section 1981. Plaintiff seeks damages, including compensatory, liquidated, punitive, attorneys' fees, and all other relief that this Court deems appropriate, and respectfully represents as follows:

### PARTIES

1.  Plaintiff, Courtney Jackson, is a citizen of the United States and citizen of the Commonwealth of Pennsylvania.

2.  Plaintiff is African-American/black, and at all times material hereto was an employee of Defendant within the meaning of the statute that forms the basis of this matter.

3.  Defendant, Galman Group, Ltd. d/b/a The Galman Group ("Galman") is a Pennsylvania corporation with its principal place of business located at 261 Old York Road, Jenkintown, PA 19046.

4. At all times material hereto, Defendant was an employer within the meaning of the statute which form the basis of this matter.

5. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

## JURISDICTION AND VENUE

6. The cause of action which form the basis of this matter arise under 42 U.S.C.A. § 1981.

7. The District Court has jurisdiction over Count I (Section 1981) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

8.. Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. § 2000e-5(f)(3).

## GENERAL ALLEGATIONS

9. Plaintiff is a black African-American female.

10. Plaintiff was hired by Galman on or about April 19, 2019 as a Leasing Consultant for The Galman Group at the Pottsgrove Townhomes and Hillside Apartments in Montgomery County, Pennsylvania.

11. As a leasing consultant, Plaintiff was responsible for greeting prospective tenants, presenting the features and benefits of the Pottsgrove Townhomes and Hillside Apartments communities, securing lease agreements from qualified and interested prospective tenants, and acting as a point of contact for current tenants.

12. Plaintiff was employed by Defendant for approximately six months until her unlawful termination on or about September 30, 2019.

13. At all times relevant throughout her employment, Plaintiff was a proficient employee who performed her job duties in a highly competent and professional manner and received satisfactory performance reviews.

14. Shortly after Plaintiff began working, Plaintiff's manager changed, and she came to be primarily supervised by Masha Yost (Caucasian – hereinafter "Yost").

15. Plaintiff also worked frequently with or around maintenance personnel, including Steve (Caucasian - Last Name Unknown).

16. Throughout the course of her employment with Defendant, Plaintiff was subjected to racial discrimination, harassment, and disparate treatment by Defendant's non-black management and co-workers.

17. Specifically, co-workers including Steve, would harass Plaintiff almost daily, and make inappropriate comments about her race and appearance, including but not limited to (1) making comments about her hair when worn in styles typical for women of color including but not limited to asking her "what happened to your hair"; (2) telling Plaintiff that he liked certain foods "like black people" (3) informing Plaintiff that "black people love watermelon" and making other similar comments regarding stereotypes of African Americans; (4) making inappropriate comments regarding confederate flags in some tenants apartments to Plaintiff; and (5) making off-color, inappropriate jokes to Plaintiff based upon African-American stereotypes.

18. Steve would also impede Plaintiff's ability to work, including by changing all of Plaintiff's passwords on her computer, which he stated was "on purpose just to be a dick."

19. Steve would also routinely make inappropariate, derogatory comments about other African-American tenants in front of Plaintiff, including but not limited to (1) referring to African-American children in the community as "little black bastards" when talking to Plaintiff, (2) telling

Plaintiff "I would shoot their asses if they came to my door and my dog would smell them before they stepped inside" when referring to African-American men walking around the community, and (3) making inappropriate comments about the appearances of African-American tenants when around Plaintiff.

20. Frequently, these comments were made in the presence of Yost, who failed to reprimand or discipline Steve or otherwise remedy the discrimination and harassment.

21. Plaintiff also specifically complained about the harassment and discriminatory comments directly to Yost, who still failed to reprimand or discipline Steve or otherwise remedy the discrimination and harassment.

22. Plaintiff likewise complained to Gordon McMullan (Caucasian), another maintenance employee.

23. Instead, Defendant's Caucasian managers and employees continued to subject Plaintiff to hostility and animosity.

24. By way of example, Plaintiff was also excluded from important meetings and conversations with the leasing team, however her Caucasian coworkers and management were always in attendance.

25. Moreover, Plaintiff was denied accommodations which, upon information and belief, were provided to similarly situated Caucasian employees.

26. By way of example, during the course of her employment Plaintiff informed Defendant that she was pregnant, was going to have to undergo a scheduled c-section and requested information on maternity leave.

27. During her employment, Plaintiff provided documentation to Defendant and Yost regarding her pregnancy, doctor visits, and scheduled surgery as requested.

28. Due to her pregnancy, in or about September 2019, Plaintiff requested an accommodation from Yost in the form of less apartment unit tours, given the increased difficulty in touring the property and units with prospective tenants while pregnant.

29. Upon information and belief, similar accommodations were granted to Caucasian employees who were pregnant.

30. Instead of granting Plaintiff's request, Yost actually required Plaintiff to perform more physical labor, including to conduct more tours, such as up to five or six in person tours a day.

31. Plaintiff also requested maternity leave, which was denied.

32. Upon information and belief, maternity leave was granted to Caucasian employees who were pregnant.

33. Shortly before Plaintiff's scheduled -c-section surgery, on or about September 30, 2019, Plaintiff was informed that she was being terminated because she had not provided documentation for her upcoming surgery.

34. Defendant's stated reason for the termination of Plaintiff is pretextual for race discrimination and/or retaliation, as Plaintiff had previously provided documentation and information regarding her upcoming surgery to Defendants, including but not limited to during phone calls in August and September of 2019.

35. The discrimination Plaintiff underwent continued even after her termination, while she continued to reside at her unit in the Pottsgrove Townhomes.

36. In fact, Plaintiff was not allowed to renew her lease and was told that Defendant was "cleaning up the neighborhood."

37. Plaintiff was discriminated against based on her race and color with respect to the terms, conditions and/or privileges of her employment.

38. Plaintiff was terminated because of the harassment she was subjected to based on her race and in retaliation for complaining about that harassment and discrimination.

39. The harassment that Ms. Jackson was subjected to was unwelcome, it was based on her race, it was severe and pervasive, it was humiliating, and it unreasonably interfered with her work performance. Plaintiff viewed the harassment as creating an abusive and hostile work environment, as would a reasonable person under similar circumstances.

40. Defendant failed to prevent or address the discriminatory, hostile, and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory, harassing and retaliatory conduct, despite Plaintiff's complaints.

41. The discriminatory and retaliatory conduct of Defendant was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

42. Under these circumstances, the retaliatory action that Plaintiff suffered after her complaints of discrimination, termination of employment, would deter a reasonable employee from exercising her rights.

43. As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity including back and front pay, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

44. Defendant acted with malice and/or reckless indifference to Plaintiff's federal and state protected rights.

45. The conduct of Defendant, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendants.

46. Plaintiff's race was a motivating factor in Defendant's improper and discriminatory treatment of plaintiff.

47. Plaintiff's race was a determinative factor in Defendant's improper and discriminatory treatment of plaintiff.

48. Defendant acted with malice, reckless indifference and/or deliberate indifference to Plaintiff's federally protected rights.

49. Upon information and belief, Defendant had a pattern or practice of discriminating against African-American employees.

## COUNT I – SECTION 1981

50. Plaintiff incorporates by reference the paragraphs above as if set forth herein in their entirety.

51. By committing the foregoing acts of discrimination, harassment and retaliation, Defendant has violated Section 1981.

52. Said violations were done with malice and/or reckless indifference toward the federally protected rights of Plaintiff and their conduct warrants the imposition of punitive damages.

53. As a direct and proximate result of Defendants' violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

54. The wrongful acts and conduct of Defendants were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

55. No previous application has been made for the relief requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a) declaring the acts and practices complained of herein to be in violation of Section 1981;

(b) enjoining and permanently restraining the violations alleged herein;

(c) entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

(d) awarding compensatory damages to make the Plaintiff whole for all past lost earnings, earning capacity and benefits, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(e) awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(f) awarding Plaintiff such other damages as are appropriate under Section 1981;

(g) awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and;

(h) granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## JURY DEMAND

Plaintiff demands a trial by jury of the claims asserted herein.

SACCHETTA & BALDINO

Date:
September 16, 2021

By: _____
GERALD B. BALDINO, III, ESQUIRE
Attorney I.D. No. 326111
308 East Second Street
Media, PA 19063
P: (610) 891-9212
F: (610) 891-7190
gbaldino@sbattorney.com
Attorney for Plaintiff